## BRADLEY v. ECCLES

(Circuit Court, N. D. New York.   March 5, 1903.)

1. PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

   If there is substantial doubt as to the validity of an unadjudicated patent, and the defendant is responsible in damages, a preliminary injunction against its infringement should not be granted.

2. SAME—PRIOR PUBLIC USE—EVIDENCE.

   Affidavits of disinterested persons as to the prior public use of a patented article, which are positive in their statements, free from inconsistencies and improbabilities and accompanied by exhibits, cannot be ignored on a motion for a preliminary injunction against infringement, and are sufficient to overcome the prima facie validity of the patent, and prevent the granting of the injunction, where uncontradicted.

3. SAME—UNADJUDICATED PATENT.

   The validity of the Hannan reissued patent, No. 11,260, for a thill coupling, *held* not sufficiently established, as against a showing of prior public use and abandonment, to warrant the granting of a preliminary injunction against its infringement; it never having been adjudicated.

In Equity.   Suit for infringement of reissued letters patent No. 11,260, for a thill coupling, granted to William Henry Hannan August 16, 1892.   On motion for preliminary injunction.

On the 5th day of January, 1903, on the bill of complaint and certain affidavits, an order was granted in this action restraining the defendant, Richard Eccles, from making and selling, in infringement of reissued letters patent No. 11,260, dated August 16, 1892, his thill coupling, which he claims the right to make and sell under letters patent No. 714,163, dated November 25, 1902.   This restraining order was accompanied by an order to show cause why same should not be continued until the trial and determination of this action on the merits, or until the further order of the court. On the return of said order, the defendant having filed his answer to the bill of complaint, and having read and filed certain affidavits and presented certain exhibits, and full argument having been had, the question is fairly presented whether a case has been made that will justify the court in continuing such restraining order during the pending of the action.

Howard P. Dennison, for complainant.
William A. Megrath, for defendant.

RAY, District Judge.   From an inspection of the exhibits in this case duly filed, it is evident that the defendant, Richard Eccles, is infringing the complainant's patent, and that the restraining order should be continued in force during the pendency of this action if the complainant's patent is valid.   The defendant is manufacturing and selling the precise thing for which a patent was granted to the complainant under reissued letters patent No. 11,260.   The defendant has a patent, but apparently it covers a different thing, and the description, specifications, and claims are different.   If they cover the same thing, with same elements, then defendant's patent is void, but it is not seriously contended such is the case.

The defendant makes no serious claim that he is not infringing the complainant's patent, provided it is valid, but insists that same is void because of prior use and abandonment to the public.   In behalf of this contention he makes a very strong case.   Indeed, the defense

¶ 1. See Patents, vol. 38, Cent. Dig. § 495.

is complete, and demonstrates the invalidity of the complainant's patent, if the statements made by certain witnesses in their affidavits filed herein, and read on the argument of this motion, are to be accepted as true. The complainant files no affidavit in answer, but insists that these witnesses are testifying to matters that occurred so long ago (some 15 years since) that their memory must be unreliable, and that therefore such affidavits ought, on the motion, at least, where there is no opportunity for cross-examination, to be disregarded, or not given full faith and credit according to their terms. These witnesses are entirely disinterested, and speak emphatically and positively, and their statements are free of inherent improbabilities. No reason is discovered for discrediting them. They may and they may not speak mistakenly, or even without knowledge on the subject, but such testimony as theirs is not to be disregarded on the theory that it may be erroneous.

The complainant's reissued letters patent No. 11,260, dated August 16, 1892, claim as follows:

"Having described my invention, what I claim as new, and desire to secure my letters patent, is:

"(1) The combination, with the draft-eye, composed of a fixed section and a movable section, of a spring-arm secured at one end and free at the other, a cam-lever pivoted to the free end of said spring-arm, and a tie attached to the cam-lever outside of its fulcrum, and connecting the cam-lever with the movable section of the draft-eye, whereby the spring-arm exerts a constant pressure upon the movable section, and also holds the cam-lever yieldingly in a locked position, substantially as set forth.

"(2) The combination, with the axle, of a draft-eye, composed of a forwardly projecting fixed section and a movable section hinged to the front end of the fixed section, a spring-arm secured to the axle and projecting forwardly therefrom, a cam-lever hinged to the free front end of the spring-arm, and a tie attached to the cam-lever outside of the fulcrum and connecting the cam-lever with the hinged section of the draft-eye, substantially as set forth.

"(3) In combination with the axle-clip, coupling-pin, fixed lower draft-eye section, h, and the upper eye-section, h', hinged to the front of the fixed section, the spring-arm, C, secured at one end to the clip-tie, and extending from the rear thereof forward underneath the same, the cam-lever, d, hinged to the free end of said spring-arm, and the bail, e, connected to the cam-lever, and adapted to engage the rear end of the hinged eye-section, substantially as set forth.

"(4) The combination, with the front axle and thill-iron, of the clip-tie, C', elongated in the direction lengthwise of the axle, and formed at the center of its length with the draft-eye section, b, axle-clips, C, C, secured to the two ends of said clip-tie, the draft-eye section, b', hinged to the eye-section, b, the spring-arm clamped between the central portion of the clip-tie, and extending from the rear of the clip-tie underneath the same, and forward therefrom, the cam-lever, d, hinged to the free end of said spring-arm, and the bail, e, connected to said cam-lever, and adapted to bear on top of the rear end of the hinged draft-eye section, substantially as described and shown.

"In testimony whereof, I have hereunto signed my name this 26th day of August, 1891.　　　　　　　　　　　　　　　　William Henry Hannan."

The defendant's letters patent, No. 714,163, dated November 25, 1902, claim as follows:

"Having thus described my invention, I claim and desire to secure by letters patent:

"(1) In a shaft or thill coupling, the combination with the draft-bar, a, having a seat for the coupling-pin, of a clip for securing the draft-bar to the

axle, a lug or projection, m, depending from said draft bar, a pivoted cap or lever to hold the coupling-pin in the draft-bar seat, a bail to engage said cap or lever and secure it in operative position, a retaining-spring having a vertical pivot connection at one end with the said depending lug or projection, and a lever having a jointed connection with the other end of said retaining-spring and with the said loop or bail, whereby when the said loop or bail is released from the pivoted cap or lever the said retaining-spring and the bail and lever carried thereby may be swung aside horizontally for convenient access to the nuts of the said clip securing the coupling to the axle.

"(2) In a shaft or thill ·coupling, the combination with a draft-bar having a coupling-pin seat, a cap pivoted to said draft-bar to hold the coupling-pin in the draft-bar seat, a substantially U-shaped retaining-spring having a vertical pivot connection at one end with said draft-bar, upon which said spring and its supported parts may be swung horizontally beneath said draft-bar to permit convenient access to the nuts of the draft-bar-securing clip, a lever pivotally connected with the other end of said retaining-spring, and a bail pivotally connected with said lever, and adapted to engage and hold the said coupling-pin cap in closed position.

"In testimony whereof, I affix my signature in presence of two witnesses.

"Richard Eccles."

Whatever may have been the purpose or determination of the Patent Office in issuing these patents, or of the patentees in describing the inventions and obtaining them, or whatever may be the proper construction and interpretation of the claims of the parties respectively and above quoted, the fact remains, and cannot be disputed (and this plainly appears by placing the thill coupling made and sold by the defendant by the side of that made and sold by the complainant), that the defendant makes and sells the same thill coupling made and sold by the plaintiff, and which is fully and accurately described in his claim above quoted, but so attached and mounted upon another piece of iron, called "lugger projection," as to enable the operator to turn the thill coupling from side to side by means of a pivot. This pivoted attachment contains no new idea of means—in short, no invention whatever. This pivot idea and the pivot itself have been in use so long that the mind of man runneth not to the contrary. The idea of so attaching the plaintiff's thill coupling to the vehicle as to be turned from side to side by means of a pivot is possibly and probably a good one, but there was no invention in its unfolding or application—only the exercise of mechanical skill by so placing or attaching the plaintiff's invention as to make its use more convenient. Almost any skilled mechanic could have done this in the mode and manner used by the defendant. If the defendant's claim describes the same thing as is described in the complainant's claim, then defendant has patented the same thing before patented to the plaintiff, and defendant is not protected. If defendant has a patent on the same thing as is described in complainant's letters patent, and there is added the pivoted attachment (old), then the defendant is not protected. If defendant has not patented the same thing as is described in complainant's letters patent, but is making and selling this same thing with this old pivoted arrangement added, then he is not protected.

In all views of the case, we come back to the question whether or not the reissued letters patent No. 11,260, dated August 16, 1892, are so clearly valid as to justify the court in continuing the restraining order against the defendant. The defendant brings into

court two old thill couplings, in use many years, with affidavits of the owners that these identical couplings have been in use constantly since the last half of the year 1887. These are, in all essentials, the same as those now made and sold by the complainant under reissued letters patent No. 11,260, and are the same thill couplings described in the said letters patent. The defendant also presents and files the affidavits of experts that they have carefully considered patent No. 11,260, reissued August 16, 1892, to William Henry Hannan (the complainant's patent in suit), and have compared the claims of said patent with defendant's device and the prior art, with a view to determining the validity of said patent, and whether or not defendant's device is an infringement of any of the claims thereof. These witnesses give with great particularity the condition of the prior art, and say in conclusion that the complainant's alleged invention, described in letters patent No. 11,260, is, in their judgment, not patentable, by reason of its prior use, etc. These affidavits are supported by exhibits tending strongly to support their assertion.

It is settled law that restraining orders in patent cases, prior to the trial on the merits, when the validity of the patent in question has not been adjudicated, should be granted with reluctance and great caution. If there is substantial doubt of the validity of the complainant's claim, and defendant is responsible in damages, restraining orders should not be granted. In Steam Gauge Co. v. Miller (C. C.) 8 Fed. 314, Judge Shipman said:

"Upon a motion for a preliminary injunction, the plaintiffs must establish the point of infringement beyond a reasonable doubt; and, as this question often depends upon the proper construction of the patent, its claims should ordinarily have been construed by a court of competent jurisdiction, or should have been practically construed by the consent and acquiescence of that part of the public which is cognizant of the extent of the monopoly."

The validity of complainant's patent has not been adjudicated by any court, and, in the sense mentioned, there is no proof of acquiescence on the part of the public or of the defendant. Its validity is denied by the defendant, who is pecuniarily responsible.

The following cases would seem to indicate that this restraining order ought not to be continued: Glaenzer et al. v. Wiederer et al. (C. C.) 33 Fed. 583; Edward Bar Co., Limited, v. N. Y. & N. H. A. S. Co. (C. C.) 32 Fed. 79; American Coat Pad Co. of B. C. v. Phœnix Pad Co., 51 C. C. A. 339, 113 Fed. 629. See, also, Smith v. Meriden Britannia Co., 92 Fed. 1003; Consolidated Fastener Co. v. Am. Fastener Co. (C. C.) 94 Fed. 523; High on Injunctions, §§ 603–610; Beach on Injunctions, §§ 856–858.

It is presumed that complainant's patent is valid. The same presumption obtains with reference to the defendant's patent. In Brown v. Zaubitz (C. C.) 105 Fed. 242, Judge Coxe held:

"The defense of a prior use, to defeat a patent, must be established beyond a reasonable doubt; and oral testimony, unsupported by patents or exhibits, which is contrary to the probabilities, under the circumstances shown, and inconsistent with previous statements and representations made by the alleged prior user, is insufficient."

But here we have exhibits, sworn affidavits, no contradictions, and no inconsistencies. Such proofs cannot be disregarded. Says a learned author:

"An interlocutory injunction against the infringement of a patent will not be allowed unless complainant's title and defendant's infringement are either admitted, or are so clear and palpable that the court can entertain no doubt on the subject. And whenever, upon the facts presented, a fair and reasonable doubt exists as to whether defendant has actually been guilty of an infringement, or where the right is, in point of law, at least doubtful, and the questions involved are exclusively for a jury, or where a reasonable doubt exists as to the originality and novelty of complainant's invention, or as to the substantial identity between the articles manufactured by defendant and those of complainant, a preliminary injunction will be withheld. So, if it does not satisfactorily appear that complainant is the first and sole inventor of the improvements claimed by his patent, the court will not interfere in the first instance. And where a preliminary injunction has already been granted, but the evidence is doubtful as to the originality of the patent, the injunction may be dissolved, defendants being required meanwhile to keep an account of their sales." High on Injunctions, § 606.

"So long as there is a substantial controversy as to the equities of the parties, the court will not dispose of those equities on a motion for an interlocutory injunction, which does not permit the questions involved to be inquired of and defined accurately according to the approved usages of chancery, and interlocutory relief will be refused, especially where the granting of the application might seriously imperil complainant's rights, and its refusal will not endanger them. And if the patent itself is of recent date, and the specifications are obscure, and the proof of infringement is meager and unsatisfactory, an injunction will not be allowed even upon final hearing. But in such case the bill may be retained, and complainant required to bring an action at law within a reasonable time." High on Injunctions, § 607.

"The presumptions in favor of the novelty of a patent, sufficient to constitute the foundation for a preliminary injunction, may be some or all of the following: The oath of the patentee that he was the original inventor; the granting of the patent after full investigation; undisturbed enjoyment by the patentee of the exclusive rights granted by the patent, coupled with acquiesence on the part of the public; direct adjudications at law or in equity establishing its validity, and prior injunctions restraining its infringement. When such grounds of presumption coexist in favor of the novelty of a patented invention, an injunction will not be refused, or, if granted, will not be dissolved, except upon the most exclusive evidence impeaching the patent." High on Injunctions, § 608.

In 2 Beach on Injunctions, §§ 856–859, the same rules are stated with great clearness. In section 857, that author says:

"A preliminary injunction to restrain the infringement of a patent will not ordinarily be granted where the validity of the patent is open to any considerable doubt. [Citing cases.] * * * To entitle a complainant to a preliminary injunction, he should show either an adjudication sustaining the validity of the patent, or such a public acquiescence as affords a reasonable presumption of its validity."

The same principles are stated in 3 Robinson on Patents, §§ 1171–1175.

It must be remembered that there is a wide difference between granting a temporary restraining order, and a hearing and decision on the merits. The evidence required in the first case may be even stronger than would be required to sustain the patent on a full hearing of the case on the merits. In such a case, having in mind the long line of unbroken authority, and the fact that there is considerable doubt of the validity of complainant's patent, by reason of prior

use and abandonment to the public, it cannot be said that wise or just judicial discretion will permit the continuance of this restraining order. The complainant will sustain same injury if his patent is found valid. The parties should proceed with diligence to take and produce their proofs, and, if this is done, no irreparable injury will be sustained.

The defendant however, will be required, as a condition of vacating the restraining order and refusing to make it permanent, to keep an account of all thill couplings made and sold by him, with the names and places of business of the persons or parties to whom sold, which accounts shall be open for the inspection of the complainant, or his duly authorized agent, from the 1st to the 5th days of each month; and, in case such account is not kept and held open for such inspection, the complainant will apply, on five days' notice, for a renewal of the restraining order.

An order to this effect will be drawn and submitted for signature.